1  BRADFORD R. JERBIC
   City Attorney
2  Nevada Bar No. 1056
   By: PHILIP R. BYRNES
3  Deputy City Attorney
   Nevada Bar No. 166
4  400 Stewart Avenue, Ninth Floor
   Las Vegas, NV 89101
5  (702) 229-6629
   Attorneys for CITY OF LAS VEGAS
6

7                  UNITED STATES DISTRICT COURT

8                       DISTRICT OF NEVADA

9  GAIL SACCO, LYLA BARTHOLOMAE,
   JOE SACCO, JOHN BROWN, CODY
10 HUFF, PATRICK BAND, ROBERT
   EDMONDS, INDIVIDUALS; SOUTHERN
11 NEVADA ADVOCATES FOR
   HOMELESS PEOPLE, LAS VEGAS
12 FOOD NOT BOMBS; LAS VEGAS
   CATHOLIC WORKER, AMERICAN
13 CIVIL LIBERTIES UNION OF NEVADA;
   GARY PECK,
14
                                          Plaintiffs,
15
                                                        CASE NO. 2:06-cv-714-RCJ-LRL
16        vs.                                           CASE NO. 2:06-cv-941-RCJ-LRL

17 CITY OF LAS VEGAS, NEVADA; LOIS
   TARKANIAN, STEVE WOLFSON, GARY
18 REESE, STEVEN ROSS, LAWRENCE
   WEEKLY, LARRY BROWN, CITY
19 COUNCIL MEMBERS; OSCAR
   GOODMAN, MAYOR; DOUGLAS
20 SELBY, CITY MANAGER; LAS VEGAS
   DEPARTMENT OF LEISURE SERVICES;
21 LAS VEGAS METROPOLITAN POLICE
   DEPARTMENT, LAS VEGAS DEPUTY
22 CITY MARSHALS,

                                          Defendants.
23

24 **DEFENDANT CITY OF LAS VEGAS' OPPOSITION TO MOTION FOR
   SUMMARY JUDGMENT AND COUNTER-MOTION FOR SUMMARY JUDGMENT**
25
          Pursuant to Fed.R.Civ.P. 56, Defendant CITY OF LAS VEGAS (hereinafter "CITY"),
26
   through its attorneys, BRADFORD R. JERBIC, City Attorney, by PHILIP R. BYRNES, Deputy
27
   City Attorney, opposes Plaintiffs' Motion for Summary Judgment and moves this Court for an
28

1  Order granting summary judgment in its favor on the grounds that no material issues of fact exist

2  in this matter and the CITY is entitled to judgment as a matter of law.

3       This motion is based upon the pleadings and papers on file herein and the following

4  points and authorities.

5       DATED: May 11, 2007

6                      BRADFORD R. JERBIC
                     City Attorney

7

8                      By:

9                      PHILIP R. BYRNES
                     Deputy City Attorney
                     Nevada Bar No. 166

10                      400 Stewart Avenue, Ninth Floor
                     Las Vegas, NV 89101

11                      Attorneys for CITY OF LAS VEGAS

12  **POINTS AND AUTHORITIES**

13  **I.**

14  **PRELIMINARY STATEMENT**

15       In these consolidated actions, Plaintiffs' challenge a number of ordinances adopted by the

16  CITY OF LAS VEGAS.  These ordinances include the CITY's permitting system for group and

17  special events in CITY parks, an ordinance permitting the establishment of Children's Park, and

18  an ordinance prohibiting the feeding of the indigent in CITY parks.  Plaintiffs also challenge a

19  "policy" of CITY marshals regarding trespass warnings to individuals who violate ordinances in

20  CITY parks.

21       None of the allegations made by Plaintiffs have legal merit.  The permitting system and

22  the designation of children's parks are not aimed at the suppression of speech.  Any incidental

23  impact on First Amendment activities is a valid time, place and manner restriction.

24       The CITY marshal's practice of giving trespass warnings to individuals engaging in

25  illegal activities in CITY parks or facilities is a valid exercise of their authority under state law.

26       The parties exhaustively briefed and argued the merits of the indigent feeding ordinance

27  during the consideration of Plaintiffs' Motion for Preliminary Injunction.  The CITY respectfully

28  contends that the ordinance is neither vague nor a violation of due process.

1     Under the facts of this case, Plaintiffs' Motion for Summary Judgment should be denied

2     and summary judgment should be entered in favor of the CITY.

3                                              II.

4                          **THE GROUP AND SPECIAL**
                        **EVENTS PERMITTING ORDINANCES**

5     **A.     THE RELEVANT FACTS.**

6         The CITY OF LAS VEGAS has 67 operating parks. *See* Affidavit of Roy Nelson,

7     attached as **Exhibit A**. [1]  These parks range from large regional parks to small neighborhood

8     parks.  Some parks are dedicated to certain uses such as soccer or softball fields.

9         Under the Las Vegas Municipal Code, events involving larger numbers of people require

10    permits.  The Code requires permits for group use and special events.  LVMC 13.36.080 governs

11    the issuance of permits for group use:

12
13            Any person who desires to use any park or recreational facility of
              the City for a group of twenty-five individuals or more, or any
14            person who desires to conduct some event in which it could
              reasonably be assumed that twenty-five or more persons might
15            gather at a park or recreational facility of the City to participate in
              or witness such event, shall first apply and obtain a permit from the
16            Director.  This Section does not apply to any event which is
              sponsored by the Department.

17    The grounds for denial of a group use permits are codified in LVMC 13.36.090:

18            The Director may deny or condition the issuance of any permit
              which is applied for pursuant to Section 13.36.090 in order to:
19            (A) Protect the use and enjoyment of the park or facility for other
              members of the public;
20            (B) Protect the health and safety of all persons who visit the park or
              facility;
21            (C) Ensure that there is adequate parking and sanity facilities to
              accommodate all persons who use the park or facility;
22            (D) Protect the grounds, equipment, vegetation, buildings, fences
              and other amenities of the park or facility from damage, overuse or
23            destruction;
              (E) Provide that the park or facility and the surrounding area is
24            kept clean and free from debris;
              (F) Ensure that the group use does not disturb or annoy persons
25            who occupy land which is nearby such park or facility.

26    A denied applicant may appeal to the Las Vegas City Council pursuant to LVMC 13.36.100.

27    _____

28    [1] Huntridge Circle Park, the center of much of this litigation, has been closed by order of
      the City Manager, because of a murder there.

1    Although LVMC 13.36.132 defines a special event as one "at which twenty-five or more

2    persons may reasonably anticipated to be in the attendance," the CITY's Department of Leisure

3    Services has administratively defined a special event as one involving more than 400 people, or

4    involving an admission charge, or involving the use of stages or power or involving bartering.

5    *Id.* A special event requires liability insurance under LVMC 13.36.136 and a security deposit

6    under LVMC 13.36.138.

7    The CITY limits permits for group use to 15 parks. Exhibit A. The CITY attempts to

8    balance providing group use with the general public's use of CITY parks. Exhibit A. The 15

9    parks are selected based on their size, adequacy of parking and available amenities such as tables,

10    grills and restrooms. *Id.* In general, group and special event permits are allowed in larger parks

11    with more amenities and more parking.

12    The majority of permits are for social events such as company picnics and family parties.

13    *Id.* Some permits have been issued for expressive events. *Id.* The Department has never

14    received an application for a permit for the express purposes of feeding the homeless. *Id.* The

15    Department of Leisure Services has received anecdotal information that groups have staged

16    events to feed the homeless under park permits.

17    The application process for group permits is perfunctory. Applications are received in the

18    Department of Leisure Services offices during normal business hours. *Id.* The actual application

19    is a simple one page document. *Id.* Applications must be submitted 14 days prior to the planned

20    event. The Department imposes a $50 minimal fee and $25 security deposit for events of less

21    than 100 persons. Applications are processed on the same day as their receipt. *Id.* The

22    application process normally takes less than 30 minutes. *Id.*

23    The Department does not make any content-based review of the applications. *Id.*

24    Applications are rarely denied. *Id.* Almost all denials are based on a prior permit for the same

25    facility. *Id.*

26    **B.    PLAINTIFFS' FACIAL CHALLENGE TO THE
       PARK PERMITTING ORDINANCES.**

27

28    The CITY's park permitting ordinances are not directed at First Amendment expressive

1  activity.  The ordinances apply to all large events in CITY parks and, in the great majority of

2  instances, they apply to simple social events such as picnics and parties.  To the extent the

3  ordinance apply to expressive activity, they are a reasonable time, place and manner regulation

4  intended to fairly allocate the use of park facilities and to protect park property.

5      In *Thomas v. Chicago Park District*, 534 U.S. 316 (2002), the Supreme Court considered

6  a facial challenge to a similar ordinance requiring permits for group events in parks.  The Court

7  rejected an argument that the permitting ordinance was a censorship scheme:

8  
> We reject those contentions. Freedman is inapposite because the
> licensing scheme at issue here is not subject-matter censorship but
9  
> content-neutral time, place, and manner regulation of the use of a
> public forum. **The Park District's ordinance does not authorize**
10  
> **a licensor to pass judgment on the content of speech:** None of
> the grounds for denying a permit has anything to do with what a
11  
> speaker might say. Indeed, **the ordinance (unlike the classic**
> **censorship scheme) is not even directed to communicative**
12  
> **activity as such, but rather to all activity conducted in a public**
> **park. The picnicker and soccer player, no less than the**
13  
> **political activist or parade marshal, must apply for a permit if**
> **the 50-person limit is to be exceeded. And the object of the**
14  
> **permit system (as plainly indicated by the permissible grounds**
> **for permit denial) is not to exclude communication of a**
15  
> **particular content, but to coordinate multiple uses of limited**
> **space, to assure preservation of the park facilities, to prevent**
16  
> **uses that are dangerous, unlawful, or impermissible under the**
> **Park District's rules, and to assure financial accountability for**
17  
> **damage caused by the event.** As the Court of Appeals well put it:
> "[T]o allow unregulated access to all comers could easily reduce
18  
> rather than enlarge the park's utility as a forum for speech." 227
> F.3d, at 924.

19  
20  
> We have never required that a content-neutral permit scheme
> regulating speech in a public forum adhere to the procedural
21  
> requirements set forth in Freedman.FN2 "A licensing standard
> which gives an official authority to censor the content of a speech
22  
> differs toto coelo from one limited by its terms, or by
> nondiscriminatory practice, to considerations of public safety and
> the like."  (Emphasis added.)
23  

24  *Id.* at 322-3.  The Court noted:

25  
> Regulations of the use of a public forum that ensure the safety and
> convenience of the people are not "inconsistent with civil liberties
26  
> but ... [are] one of the means of safeguarding the good order upon
> which [civil liberties] ultimately depend." Cox v. New Hampshire,
27  
> 312 U.S. 569, 574, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). Such a
> traditional exercise of authority does not raise the censorship
28  
> concerns that prompted us to impose the extraordinary procedural
> safeguards on the film licensing process in Freedman.

1 | The CITY's permitting ordinance is similar to the ordinance in *Thomas*. It is directed at all large

2 | groups in the park applying to the "picnicker and soccer player" as well as the "political activist

3 | or parade marshal."

4 | The *Thomas* court, however, cautioned that a content-neutral restriction must confine the

5 | discretion of the issuer of the permit:

6 | > Of course even content-neutral time, place, and manner restrictions
can be applied in such a manner as to stifle free expression. Where

7 | > the licensing official enjoys unduly broad discretion in determining
whether to grant or deny a permit, there is a risk that he will favor

8 | > or disfavor speech based on its content. See Forsyth County v.
Nationalist Movement, 505 U.S. 123, 131, 112 S.Ct. 2395, 120

9 | > L.Ed.2d 101 (1992). We have thus required that a time, place, and
manner regulation contain adequate standards to guide the official's

10 | > decision and render it subject to effective judicial review.

11 | *Id.* at 323. The Court described the nature of the Chicago ordinance:

12 | > As we have described, the Park District may deny a permit only for
one or more of the reasons set forth in the ordinance. See n. 1,

13 | > supra. It may deny, for example, when the application is
incomplete or contains a material falsehood or misrepresentation;

14 | > when the applicant has damaged Park District property on prior
occasions and has not paid for the damage; when a permit has been

15 | > granted to an earlier applicant for the same time and place; when
the intended use would present an unreasonable danger to the

16 | > health or safety of park users or Park District employees; or when
the applicant has violated the terms of a prior permit. See Chicago

17 | > Park Dist.Code, ch. VII, § C.5.e. Moreover, the Park District must
process applications within 28 days, § C.5.c, and must clearly

18 | > explain its reasons for any denial, § C.5.e. These grounds are
reasonably specific and objective, and do not leave the decision "to

19 | > the whim of the administrator." Forsyth County, 505 U.S., at 133,
112 S.Ct. 2395. They provide " 'narrowly drawn, reasonable and

20 | > definite standards' " to guide the licensor's determination, ibid.
(quoting Niemotko, supra, at 271, 71 S.Ct. 325). And they are

21 | > enforceable on review-first by appeal to the General
Superintendent of the Park District, see Chicago Park Dist.Code,

22 | > ch. VII, § C.6.a, and then by writ of common-law certiorari in the
Illinois courts.

23 | *Id.*

24 | The CITY's ordinance similarly restricts the discretion of the Department of Leisure

25 | Services. LVMC 13.36.090 confines the discretion to deny or condition a permit to the orderly

26 | use of the park for other members of the public, the protection of health and safety, the protection

27 | and cleanliness of the park and the avoidance of excessive noise to the neighbors of the park.

28 |

The ordinance does not allow any review of an application based upon the content or viewpoint of any message to be communicated by the applicant.

Plaintiffs also complain about the requirement that applications be submitted 14 days prior to the event. The ordinance approved in *Thomas* allowed up to 28 days to approve a permit. *Id.* at 323. The CITY's 14-day requirement is not facially unconstitutional.

The CITY's ordinances are similar to that approved by the Supreme Court in *Thomas*. The ordinances are not facially unconstitutional.

### C.   PLAINTIFFS' AS-APPLIED CHALLENGE TO THE PARK PERMITTING ORDINANCE

Plaintiffs have not shown any pattern of discriminatory enforcement of the park permitting ordinances. They have not provided sufficient evidence to support an as applied challenge.

In *Thomas*, 534 U.S. at 325, the Court stated:

> **Granting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional, but we think that this abuse must be dealt with if and when a pattern of unlawful favoritism appears, rather than by insisting upon a degree of rigidity that is found in few legal arrangements.** On petitioners' theory, every obscenity law, or every law placing limits upon political expenditures, contains a constitutional flaw, since it merely permits, but does not require, prosecution. The prophylaxis achieved by insisting upon a rigid, no-waiver application of the ordinance requirements would be far outweighed, we think, by the accompanying senseless prohibition of speech (and of other activity in the park) by organizations that fail to meet the technical requirements of the ordinance but for one reason or another pose no risk of the evils that those requirements are designed to avoid. On balance, we think the permissive nature of the ordinance furthers, rather than constricts, free speech. (Emphasis added.)

Plaintiffs have shown no such pattern here. They rely primarily on statements of the City Attorney during the hearing on the Motion for Preliminary Injunction. The City Attorney stated that the CITY would not grant a permit for a homeless feeding event **at Huntridge Circle Park**. *See* Transcript, Motion Hearing, p. 30 (attached to Plaintiffs' Motion for Summary Judgment as Exhibit 12). Huntridge Circle Park is one of the CITY's smaller parks and is not open for group use. Plaintiffs also cite a statement by the City Attorney that he had been informed that the local

1    neighborhood association had been allowed to have barbeques at Huntridge Circle Park. *Id.* at

2    36-37. This hearsay evidence is insufficient to justify a finding that the ordinances are applied in

3    a discriminatory manner on a CITY wide basis.

4         Plaintiffs scant evidence concerning only the now-closed Huntridge Circle Park is

5    insufficient to support an as-applied challenge to the permitting ordinances. Plaintiffs have not

6    established any pattern of discrimination for a generally applicable content neutral permitting

7    code applicable to all CITY parks.

8         **D.    THE CITY CAN LEGITIMATELY LIMIT
           GROUP PERMITS TO LARGER PARKS**
9
10        Plaintiffs complain that the CITY does not grant group permits in all parks. The CITY

11   may legitimately regulate the use of parks to permit group use only in parks with sufficient

12   facilities and amenities to accommodate the use.

13        As shown in Exhibit 1, the CITY limits group permits to 15 larger parks. These parks are

14   geographically diverse and are selected based upon their size and amenities. The "reasonable"

15   parks are selected based upon the availability of parking, tables, grills, restrooms, shelters and

16   other amenities to accommodate both group use and the use of the general public. The selection

17   of reservable parks is a reasonable balance of park use and is in no way based on any First

18   Amendment expression.

19        In *One World One Family Now v. City and County of Honolulu*, 76 F.3d 1009, 1012 (9th

20   Cir. 1996), the Ninth Circuit described the standards governing time, place and manner

21   restrictions:

22             We use the standard governing time, place and manner
               restrictions.FN4 Such restrictions are valid if they (1) are
23             content-neutral; (2) are narrowly tailored to serve a significant
               governmental interest; and (3) leave open ample alternative
24             channels of communication.

25        The noted "a speech restriction is content neutral if it is justified without reference to the

26   content of the regulated speech." In this case, the limitation of group use applies to all group use

27   and falls primarily on social use of parks. The limitation to larger parks is in no way based on

28   . . . .

1  content of speech.  The restriction is based primarily on an attempt to balance group and general

2  public use and to protect park facilities.

3       The limitation to larger parks is also narrowly tailored.  In *Santa Monica Food Not*

4  *Bombs v. City of Santa Monica*, 450 F.3d 1022, 1038 (9th Cir. 2006), the Ninth Circuit stated:

5         **A narrowly-tailored permitting regulation need not be the least restrictive means of furthering a locality's asserted interests.**

6  The regulation may not, however, burden substantially more speech than necessary to achieve a scheme's important goals. See

7  United States v. Baugh, 187 F.3d 1037, 1043 (9th Cir.1999).  **"[T]he requirement of narrow tailoring is satisfied 'so long as**

8  **the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.' "**

9  Ward, 491 U.S. at 799, 109 S.Ct. 2746 (quoting United States v. Albertini, 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536

10  (1985)).

11  As we have noted, local governments can exercise their substantial interest in regulating competing uses of traditional public fora by

12  imposing permitting requirements for certain uses.

13  (Emphasis added.)  The CITY's limitation on group use to larger parks promotes its interest in

14  balancing competing group and general use of parks and protects the use of park facilities.

15       The limitation also leaves open ample alternative channels of communication.  The CITY

16  has 15 "reservable" parks.  This number adequately provides for group use.

17  **E.    THE PARK PERMITTING ORDINANCES DO NOT VIOLATE EQUAL PROTECTION**

18

19       Plaintiffs allege the group use ordinances violate equal protection because the CITY does

20  not require that it apply for a permit from itself to conduct a group event in a park.  The CITY's

21  exemption of its own events from the permitting process clearly survives rational basis scrutiny.

22       In *Harris v. McRae*, 448 U.S. 297, 322 (1980), the Supreme Court described the nature

23  of an equal protection claim in the context of a statute limiting federal funding of abortion:

24  The guarantee of equal protection under the Fifth Amendment is not a source of substantive rights or liberties, but rather **a right to be free from invidious discrimination in**

25  **statutory classifications** and other governmental activity.  **It is well settled that where a statutory classification does not itself**

26  **impinge on a right or liberty protected by the Constitution, the validity of classification must be sustained unless "the**

27  **classification rests on grounds wholly irrelevant to the achievement of [any legitimate governmental] objective."**

28  *McGowan v. Maryland*, 366 U.S., at 425, 81 S. Ct., at 1105.

> This presumption of constitutional validity, however, disappears if a statutory classification is predicated on criteria that are, in a constitutional sense, "suspect," the principal example of which is a classification based on race . . . .  (Emphasis added.)

The purpose of the permitting system is to allow the CITY to coordinate requests for group use in CITY parks and to ensure that groups are not competing for the same facilities at the same time.  The application for the permit notifies the CITY that the group desires to use park facilities at a specific time and the permit, or reservation, allows the CITY to hold the facility open for the group.

In the case of the CITY's own events, the CITY presumably knows of its intended use of the park facilities and will ensure that the facilities are available at the appointed time.  Equal protection does not require that the CITY apply to itself for a permit.

### F.    PLAINTIFFS DO NOT HAVE STANDING TO CHALLENGE THE INSURANCE REQUIREMENTS FOR SPECIAL EVENTS

The record indicates that Plaintiffs engage in feeding and "ministering" to homeless individuals in CITY parks.  While their events may fall under the group use permitting ordinances, the events do not reach the magnitude of special events under the ordinances.

Although LVMC 13.36 as an activity "at which twenty five or more persons may reasonably be anticipated to be in attendance," the Department of Leisure Services have administratively defined special events as:

> Any event with 400 or more people.
> An event with less than 400 people is also considered a special event if the following is involved:
> Events charging admission.
> Events requiring use of stage, power, water, etc.
> Events with bartering activity.

*See* Exhibit A.  In *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1035 (9th Cir. 2006), the Court stated:

> In like circumstances, it is common to consider a city's authoritative interpretation of its guidelines and ordinances. See Forsyth County v. Nationalist Movement, 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) ("In evaluating respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it."); Ward v. Rock Against Racism, 491 U.S. 781, 795-96, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)

("Administrative interpretation and implementation of a regulation are, of course, highly relevant to our analysis, for '[i]n evaluating a facial challenge to a state law, a federal court must ... consider any limiting construction that a state court or enforcement agency has proffered.' " (quoting Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (alterations in original))). To affect the constitutional analysis, such a limiting construction must "be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice."

In this case, the administrative definition has significantly reduced the applicability of the special events ordinances.

Under LVMC 13.36.136, a special events permittee is required to provide liability insurance. However, nothing in the record indicates that any Plaintiff has ever staged or intended to stage an event of a magnitude within the special events ordinances.

In *Legal Aid Soc. of Hawaii v. Legal Services Corp.*, 145 F.3d 1017, 1030 (9th Cir. 1998), the Ninth Circuit described the constitutional requirements of standing:

> The "irreducible constitutional minimum of standing" contains three requirements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). First, there must be an "injury in fact." The "injury in fact" must be the invasion of a legally protected interest which is "concrete and particularized," *id.*, and "actual or imminent, not 'conjectural' or 'hypothetical.' " *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)). Second, there must be causation-"a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co.*, 118 S. Ct. at 1016-17. Third, there must be redressability- "a likelihood that the requested relief will redress the alleged injury." *Id.* 118 S. Ct. at 1017.

In this case, there is no indication that Plaintiffs have, or will ever, conducted any activity subject to the special events ordinances. They do not have standing to challenge its insurance requirements.

### III.

### PLAINTIFFS CHALLENGE TO THE CITY'S DESIGNATION OF CHILDREN'S PARKS

#### A.    THE RELEVANT FACTS.

LVMC 13.36.060 allows the designation of certain parks primarily for the use of small

1    children.  LVMC 13.36.070 provides:

2           From and after April 16, 1969, no person over the age of twelve
            years, other than a parent, guardian or other responsible person
3           accompanying a child of the age of twelve years or younger, shall
            visit, frequent, be present in or loiter around any park which is
4           designated in or pursuant to Section 13.36.060 as a children's park.

5           On July 12, 1999, the Las Vegas City Council adopted a resolution designating three

6    parks; James Gay Park, Ethel Pearson Park and the Fitzgerald Tot Lot, as children's parks.  *See*

7    Plaintiffs' Motion for Summary Judgment, Exhibit 8.  The resolution noted:

8           WHEREAS, residents within the vicinity of James Gay
            Park, Ethel Pearson Park and Fitzgerald Tot Lot have expressed
9           great concern over the present environment to be found within each
            of the named parks, an environment which includes a number of
10          activities that are inconsistent with the use and enjoyment of each
            park by children; and
11                 WHEREAS, those activities include the use of each park by
            adults as a place for the following: the drinking of alcoholic
12          beverages, drug use, other drug-related activities, violence and the
            threat of violence, sexual activity, and sleeping; and
13                 WHEREAS, the existence of this environment in each park
            has also been observed by officers of the Las Vegas Metropolitan
14          Police Department and by officers, employees and representatives
            of various City departments and units, such as the Department of
15          Public Works, Department of Leisure Activities, and the City
            Marshal Unit; and
16                 WHEREAS, the City Council finds that the preservation of
            these parks as recreational locations in which children can feel safe
17          and secure is essential, and is consistent with the authority granted
            by and the purposes underlying LVMC 13.36.060.
18
      *Id.*  The designations were based on community concerns and were addressed to crime and other
19
      activities inappropriate for children.
20
             **B.    THE DESIGNATION OF THE THREE CHILDREN'S PARKS**
21           **IS A VALID TIME PLACE AND MANNER RESTRICTION.**

22          The designation of children's parks is intended to provide a safe play area for small

23   children and to reduce their exposure to crime and inappropriate activities.  It is not related to any

24   expressive conduct occurring in the parks.  The designation is narrowly tailored to the protection

25   of children and leaves ample alternative avenues of communication - the remaining 64 parks in

26   the CITY.

27          The Court's review of the Children's Park resolution is similar to the park permitting

28   ordinance.  A time place and manner regulation is permissible if it is content neutral, is narrowly

1  tailored to serve a significant government interest and leaves open ample alternative channels of

2  communication.

3       In *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), the Court described the

4  inquiry to determine content neutrality:

5            **The principal inquiry in determining content**

          **neutrality, in speech cases generally and in time, place, or**

6            **manner cases in particular, is whether the government has**

          **adopted a regulation of speech because of disagreement with**

7            **the message it conveys.** *Community for Creative Non-Violence,*

          *supra*, 468 U.S., at 295, 104 S. Ct., at 3070. **The government's**

8            **purpose is the controlling consideration. A regulation that**

          **serves purposes unrelated to the content of expression is**

9            **deemed neutral, even if it has an incidental effect on some**

          **speakers or messages but not others.** *See Renton v. Playtime*

10           *Theatres, Inc.*, 475 U.S. 41, 47-48, 106 S. Ct. 925, 929-930, 89

          L. Ed. 2d 29 (1986).  Government regulation of expressive

11           activity is content neutral so long as it is "*justified* without

          reference to the content of the regulated speech." [Emphasis

12           added.]

13      In this case, there is no indication that the City Council designated the three children's

14 parks in response to any expressive activity.  The designation was in response to crime and

15 inappropriate conduct in the parks.  The designation was content neutral.

16      *Ward* also described the narrow tailoring proof of the test:

17           Lest any confusion on the point remain, we reaffirm today

          that a regulation of the time, place, or manner of protected speech

18           must be narrowly tailored to serve the government's legitimate,

          content-neutral interests but that it need not be the least restrictive

19           or **least intrusive means of doing so**.  Rather, **the requirement**

          **of narrow tailoring is satisfied "so long as the ··· regulation**

20           **promotes a substantial government interest that would be**

          **achieved less effectively absent the regulation."** *United States*

21           *v. Albertini*, 472 U.S. 675, 689, 105 S. Ct. 2897, 2906, 86 L.

          Ed. 2d 536 (1985); *see also Community for Creative*

22           *Non-Violence, supra*, 468 U.S., at 297, 104 S.Ct., at 3071.  To

          be sure, this standard does not mean that a time, place, or manner

23           regulation may burden substantially more speech than is

          necessary to further the government's legitimate interests.

24           Government may not regulate expression in such a manner that a

          substantial portion of the burden on speech does not serve to

25           advance its goals.  *See Frisby v. Schultz*, 487 U.S., at 485, 108

          S. Ct., at 2502 ("A complete ban can be narrowly tailored but

26           only if each activity within the proscription's scope is an

          appropriately targeted evil").  **So long as the means chosen are**

27           **not substantially broader than necessary to achieve the**

          **government's interest, however, the regulation will not be**

28           **invalid simply because a court concludes that the**

1
2
3
4

           government's interest could be adequately served by some
less-speech-restrictive alternative. "The validity of [time,
place, or manner] regulations does not turn on a judge's
agreement with the responsible decisionmaker concerning the
most appropriate method for promoting significant
government interests" or the degree to which those interests
should be promoted.

5

*Id.* at 798-800 (emphasis added).

6        In this case, the protection of children and the provision of secure play areas is

7  undoubtedly a substantial government interest.  The dedication of a small portion of the

8  CITY's parks to child-only use substantially furthers that government interest.

9        Finally, the CITY provides ample alternative avenues of communication in the form of

10  the remaining 64 parks and other public fora, such as streets and sidewalks within the CITY.

11    **C.**    **THE CHILDREN'S PARKS DESIGNATION**
           **DOES NOT VIOLATE EQUAL PROTECTION.**

12

13        The Children's Park designation clearly survives rational basis scrutiny.  *Harris v.*

14  *McRae*, 498 U.S. 297, 322 (1980) The CITY undoubtedly has a legitimate interest in

15  protecting children and providing a safe environment for small children to play.  The

16  limitation, at these parks, to children and their parents or responsible parties, is logically

17  related to this government interest.

18                          **IV.**

19        **PLAINTIFFS' CHALLENGE TO THE TRESPASS POLICY**

20        Pursuant to Department of Detention and Enforcement policies, individuals may be

21  given trespass warnings if they commit crimes on CITY property.  The marshal's use of

22  trespass warnings in instances of criminal activity does not violate any constitutional rights.

23        Under Nevada law, an individual may trespass on public property.  *See* NRS 207.200.

24  An individual may be banned from a public forum for engaging in criminal activity.

25        In *Virginia v. Hicks*, 539 U.S. 113, 123 (2003), the Supreme Court reviewed a trespass

26  regulation at a low income housing project and stated:

27
28

           As for the written provision authorizing the police to arrest those
who return to Whitcomb Court after receiving a barment notice:
That certainly does not violate the First Amendment as applied to
persons whose postnotice entry is not for the purpose of engaging

in constitutionally protected speech. And Hicks has not even established that it would violate the First Amendment as applied to persons whose postnotice *is* for that purpose. **Even assuming the streets of Whitcomb Court are a public forum, the notice-barment rule subjects to arrest those who reenter after trespassing and after being warned not to return-*regardless* of whether, upon their return, they seek to engage in speech. Neither the basis for the barment sanction (the prior trespass) nor its purpose (preventing future trespasses) has anything to do with the First Amendment. Punishing its violation by a person who wishes to engage in free speech no more implicates the First Amendment than would the punishment of a person who has (pursuant to lawful regulation) been banned from a public park after vandalizing it, and who ignores the ban in order to take part in a political demonstration**. Here, as there, it is Hicks' nonexpressive *conduct*-his entry in violation of the notice-barment rule-not his speech, for which he is punished as a trespasser. (Emphasis added.)

Similarly, in this case, the use of trespass warnings to individuals who have committed criminal offenses on CITY property is not a constitutional violation.

**V.**

**PLAINTIFFS' CHALLENGE TO THE HOMELESS FEEDING ORDINANCE**

The parties have exhaustively briefed and argued the constitutionality of LVMC 13.36.055(6) during Plaintiffs' Motion for Preliminary Injunction. In the interest of judicial economy, the CITY incorporates and reasserts all prior arguments, written and oral, asserted in response to the Motion for Preliminary Injunction.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

1

**VI.**

2

**CONCLUSION**

3    For the foregoing reasons, the Court should deny Plaintiffs' Motion for Summary

4 Judgment and enter summary judgment in favor of the CITY OF LAS VEGAS.

5    DATED: May 11, 2007

6

7                                          BRADFORD R. JERBIC
                                           City Attorney

8
                                           By:

9                                              PHILIP R. BYRNES
                                               Deputy City Attorney

10                                             Nevada Bar No. 166
                                               400 Stewart Avenue, Ninth Floor

11                                             Las Vegas, NV 89101
                                               Attorneys for CITY OF LAS VEGAS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF MAILING**

I hereby certify that on May 11, 2007, I served a true and correct copy of the foregoing

DEFENDANT CITY OF LAS VEGAS OPPOSITION TO MOTION FOR SUMMARY

JUDGMENT AND COUNTER-MOTION FOR SUMMARY JUDGMENT through the

CM/ECF system of the United States District Court for the District of Nevada (or, if

necessary, by United States Mail at Las Vegas, Nevada, postage fully prepaid) upon the

following:

Allen Lichtenstein, Esq.
ACLU OF NEVADA
3315 Russell Road, #222
Las Vegas, NV 89120
Attorneys for Plaintiffs

Robert E. Murdock, Esq.
MURDOCK & ASSOCIATES, CHTD.
520 South Fourth Street
Las Vegas, NV 89101
Attorneys for Amici Curiae

_____
AN EMPLOYEE OF THE CITY OF LAS VEGAS