BRADFORD R. JERBIC
City Attorney
Nevada Bar No. 1056
By: PHILIP R. BYRNES
Deputy City Attorney
Nevada Bar No. 166
400 Stewart Avenue, Ninth Floor
Las Vegas, NV 89101
(702) 229-6629
Attorneys for CITY OF LAS VEGAS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

GAIL SACCO, LYLA BARTHOLOMAE, JOE SACCO, JOHN BROWN, CODY HUFF, PATRICK BAND, ROBERT EDMONDS, INDIVIDUALS; SOUTHERN NEVADA ADVOCATES FOR HOMELESS PEOPLE, LAS VEGAS FOOD NOT BOMBS; LAS VEGAS CATHOLIC WORKER, AMERICAN CIVIL LIBERTIES UNION OF NEVADA; GARY PECK,

Plaintiffs,

vs.

CITY OF LAS VEGAS, NEVADA; LOIS TARKANIAN, STEVE WOLFSON, GARY REESE, STEVEN ROSS, LAWRENCE WEEKLY, LARRY BROWN, CITY COUNCIL MEMBERS; OSCAR GOODMAN, MAYOR; DOUGLAS SELBY, CITY MANAGER; LAS VEGAS DEPARTMENT OF LEISURE SERVICES; LAS VEGAS METROPOLITAN POLICE DEPARTMENT, LAS VEGAS DEPUTY CITY MARSHALS,

Defendants.

CASE NO. 2:06-cv-714-RCJ-LRL
CASE NO. 2:06-cv-941-RCJ-LRL

**DEFENDANT CITY OF LAS VEGAS' REPLY**
**TO OPPOSITION TO COUNTER-MOTION FOR SUMMARY JUDGMENT**

Defendant CITY OF LAS VEGAS; LOIS TARKANIAN; STEVE WOLFSON; GARY REESE; STEVEN ROSS; LAWRENCE WEEKLY; LARRY BROWN; CITY COUNCIL MEMBERS; OSCAR GOODMAN, MAYOR; DOUGLAS SELBY, CITY MANAGER; LAS

VEGAS DEPARTMENT OF LEISURE SERVICES; and LAS VEGAS DEPUTY CITY MARSHALS (hereinafter "CITY"), through its attorneys, BRADFORD R. JERBIC, City Attorney, by PHILIP R. BYRNES, Deputy City Attorney, replies to Plaintiffs' Opposition to the CITY's Counter-Motion for Summary Judgment.

## I.

## PRELIMINARY STATEMENT

The present motions concern Plaintiffs' constitutional challenges to the CITY permitting ordinances for group events in CITY parks. Plaintiffs also challenge the CITY's designation of three parks as Children's Parks and a policy of City Marshals allowing trespass warnings to individuals who commit crimes in CITY parks. None of these challenges involve a constitutional violation.

The CITY's permitting ordinances for group events is a generally applicable law that in the overwhelming majority of occasions applies to social events such as picnics and parties. To the extent it applies to activities protected by the First Amendment, it is a valid time, place and manner restriction intended to protect park property and to allow park use by all members of the public.

The permitting ordinances are also constitutional as applied in this matter. While Plaintiffs speculate about hypothetical scenarios where the ordinances could be unconstitutional, nothing in the current record supports a constitutional violation.

Similarly, the designation of three parks as children's parks is a reasonable time, place and manner restriction intended to protect children from criminal activity occurring in the parks.

The City Marshal's policy of issuing trespass warnings to individuals who commit crimes in CITY parks is a valid exercise of the CITY's police powers under Nevada law. The policy is neither vague nor a deprivation of due process.

Plaintiffs have not asserted a viable constitutional claim in any of these three areas. The Court should grant the CITY's Counter-Motion for Summary Judgment on these issues.

. . . .

. . . .

II.

THE GROUP EVENT ORDINANCES ARE FACIALLY CONSTITUTIONAL

The CITY ordinances apply to a broad range of group events in CITY parks. While some events may implicate First Amendment rights, the majority of group events involve simple social events such as company or family picnics. The CITY requires a system to accommodate group events while protecting park facilities and allowing park use by other members of the public.

In *Thomas v. Chicago Park District*, 534 U.S., 316 322-3 (2002), the Supreme Court described a similar Chicago ordinance:

> We reject those contentions. Freedman is inapposite because the licensing scheme at issue here is not subject-matter censorship but content-neutral time, place, and manner regulation of the use of a public forum. **The Park District's ordinance does not authorize a licensor to pass judgment on the content of speech:** None of the grounds for denying a permit has anything to do with what a speaker might say. Indeed, **the ordinance (unlike the classic censorship scheme) is not even directed to communicative activity as such, but rather to all activity conducted in a public park. The picnicker and soccer player, no less than the political activist or parade marshal, must apply for a permit if the 50-person limit is to be exceeded. And the object of the permit system (as plainly indicated by the permissible grounds for permit denial) is not to exclude communication of a particular content, but to coordinate multiple uses of limited space, to assure preservation of the park facilities, to prevent uses that are dangerous, unlawful, or impermissible under the Park District's rules, and to assure financial accountability for damage caused by the event.** As the Court of Appeals well put it: "[T]o allow unregulated access to all comers could easily reduce rather than enlarge the park's utility as a forum for speech." 227 F.3d, at 924.
>
> We have never required that a content-neutral permit scheme regulating speech in a public forum adhere to the procedural requirements set forth in Freedman.FN2 "A licensing standard which gives an official authority to censor the content of a speech differs toto coelo from one limited by its terms, or by nondiscriminatory practice, to considerations of public safety and the like." (Emphasis added.)

The Court noted that "[r]egulations of the use of a public forum that ensure the safety and convenience of the people are not inconsistent with civil liberties but . . .[are] one of the means of safeguarding the good order upon which [civil liberties] ultimately depend." *Id.* at 323.

Las Vegas City Attorney
400 E. Stewart Ave., 9th Floor
Las Vegas, Nevada 89101
702-229-6629

To the extent group events implicate First Amendment rights, the ordinances are evaluated as time, place and manner restrictions. *Id.* In *National Council of Arab Americans v. City of New York*, 331 F.Supp.2d 258, 266-7 (S.D.N.Y. 2004), the court stated:

> Political demonstrations conducted in traditional public fora such as parks constitute protected activity under the First Amendment. See Gregory v. City of Chicago, 394 U.S. 111, 112, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); Hague v. Comm. for Indus. Org., 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (stating that parks "have immemorially been held in trust for use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."). However, the **right to engage in expressive political activity in public fora is not absolute.** See Texas v. Johnson, 491 U.S. 397, 406, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); Hague, 307 U.S. at 516, 59 S.Ct. 954. **Such conduct "may be regulated in the interest of all[,] ... and in consonance with peace and good order."** Hague, 307 U.S. at 516, 59 S.Ct. 954. Accordingly, **municipalities may regulate the use of public facilities "to assure the safety and convenience of the people in their use."** Cox v. Louisiana, 379 U.S. 536, 554, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). **Reasonable "time, place or manner" restrictions on protected speech are permissible so long as they are content-neutral, narrowly tailored to serve a significant governmental interest, and leave open adequate alternative channels of communication**. (Emphasis added.)

On their face, the CITY's group use ordinances are valid time, place and manner restrictions.

The ordinance applies to all group events regardless of the message, if any, to be conveyed by the group. LVMC 13.36.080 provides:

> Any person who desires to use any park or recreational facility of the City for a group of twenty-five individuals or more, or any person who desires to conduct some event in which it could reasonably be assumed that twenty-five or more persons might gather at a park or recreational facility of the City to participate in or witness such event, shall first apply and obtain a permit from the Director. This Section does not apply to any event which is sponsored by the Department.

As the *Thomas* Court observed the ordinance applies to the "picnicker and soccer player" as well as the "political activist or parade marshal."

In *National Council of Arab Americans v. City of New York*, 331 F.Supp.2d 258, 267-8 (S.D.N.Y. 2004), the Court described content neutrality:

. . . .

Las Vegas City Attorney
400 E. Stewart Ave., 9th Floor
Las Vegas, Nevada 89101
702-229-6629

> On its face, this permit scheme is, quite palpably, content neutral. **"The principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of the disagreement with the message it conveys."** Ward, 491 U.S. at 791, 109 S.Ct. 2746. **"A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."** Ward, 491 U.S. at 791, 109 S.Ct. 2746; City of Renton v. Playtime Theaters, Inc., 475 U.S. 41, 47-48, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Here, **the permit scheme requires a permit for any "special event" involving more than twenty people.** See 56 R.C.N.Y. §§ 1-02, 1-05(a); compare Thomas v. Chicago Park Dist., 534 U.S. 316, 318, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) (requiring a permit for any gathering of over fifty individuals). The lone exception for "casual park use by visitors or tourists," 56 R.C.N.Y. § 1-02, does not discriminate based on content because it does not turn on the message, if any, espoused by visitors or tourists. Rather, the distinction relates to the manner in which groups larger than twenty assemble. The Park regulations refer neither to the content of the activity, nor to the event organizers or their views. The permit scheme is, accordingly, content-neutral. (Emphasis added.)

Similarly, the CITY's ordinance applies to all group use by more than 25 people regardless of any message that may be conveyed. The ordinance is facially content neutral.

The CITY's ordinances are also narrowly tailored. In *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1038 (9th Cir. 2006), the Ninth Circuit stated:

> **A narrowly-tailored permitting regulation need not be the least restrictive means of furthering a locality's asserted interests.** The regulation may not, however, burden substantially more speech than necessary to achieve a scheme's important goals. See United States v. Baugh, 187 F.3d 1037, 1043 (9th Cir.1999). **"[T]he requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.' "** Ward, 491 U.S. at 799, 109 S.Ct. 2746 (quoting United States v. Albertini, 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). (Emphasis added.)

The *National Council* court found that a New York ordinance, similar to that of the CITY's, was narrowly tailored:

> Moreover, the permit scheme is sufficiently tailored to a significant governmental interest. **A municipality's goal of managing and maintaining park facilities constitutes a significant government interest**. See Clark, 468 U.S. at 296, 104 S.Ct. 3065 (discussing "substantial [government] interest in maintaining parks ... in an attractive and intact condition, readily available to the millions of people who wish to see and enjoy them by their presence"); Paulsen v. Gotbaum, 982 F.2d 825, 830 (2d Cir.1992) (describing

> "substantial governmental interest in conserving parks"); see also Grossman v. City of Portland, 33 F.3d 1200, 1206 (9th Cir.1994) (recognizing the possible need for such permits for larger groups "where the burden placed on park facilities and the possibility of interference with other park users is more substantial" than for lone individuals). **The New York City permit scheme is limited to events exceeding a certain size, while enabling the Parks Department to regulate the manner in which events take place and the number of attendees at events, and manage upkeep of the parks. Thus, it is narrowly tailored to the government's interest.** Cf. Grossman, 33 F.3d at 1206 (city ordinance making it unlawful for any person to participate in an organized demonstration or make any address in city park without permit not narrowly tailored since law reached conduct unlikely to affect government interest in public safety and convenience in use of parks); Community for Creative Non-Violence v. Turner, 893 F.2d 1387, 1392 (D.C.Cir.1990) (regulation requiring any individual wanting "to engage in free speech activities" in "organized way" to obtain permit without regard to size of group facially invalid because of overbreadth). (Emphasis added.)

The CITY ordinance is addressed at the same significant government interests of managing and maintaining park facilities and is narrowly tailored to those interests.

The ordinances also leave open adequate alternative channels of communication. Plaintiffs rely primarily on the CITY's administrative policy of allowing permits or reservations in only 15 parks. This administrative limitation is not found on the face of the ordinances and will be discussed infra. However, the ordinances, even with the administrative limitation to 15 larger parks in all areas of the CITY leaves ample opportunities for group events.

On their face, the CITY's ordinances are generally applicable laws and a valid time, place and manner restriction to the extent they implicate activities protected by the First Amendment. Plaintiffs have not alleged a valid facial challenge against the ordinances.

## III.

## THE CITY MAY CONSTITUTIONALLY LIMIT GROUP USE TO LARGER PARKS WITH APPROPRIATE AMENITIES

The CITY's limitation of group events to 15 larger parks is a reasonable time, place and manner restriction. The determination is based upon the size and available amenities at the parks and is an attempt to balance group use with general public use of parks.

The limitation is applicable to all group use and is not directed at any message to be

Las Vegas City Attorney
400 E. Stewart Ave., 9th Floor
Las Vegas, Nevada 89101
702-229-6629

conveyed at the event. The limitation is clearly content neutral. *See National Council of Arab Americans v. City of New York,* 331 F.Supp.2d 258, 267-8 (S.D.N.Y. 2004).

The limitation is also narrowly tailored to a substantial government interest of "managing and maintaining park facilities." *Id.* at 268. The allowance of group events at smaller parks with fewer amenities would strain park facilities and conflict with use by members of the general public.

Finally, 15 larger parks with ample amenities are available for group use. These parks are spread throughout the CITY and provide ample alternative means for any group use.

The administrative limitation to group use in 15 "reservable" parks is a reasonable time, place and manner restriction.

## IV.

## THE GROUP USE ORDINANCES ARE NOT UNCONSTITUTIONALLY VAGUE

Plaintiffs claim that the use of the word "witness" in LVMC 13.36.080 renders the ordinance unconstitutionally vague. The ordinance is clear to a person of ordinary intelligence that a permit is required for an event. "Where it can reasonably be assumed that twenty-five or more persons might gather at a park. . . to participate in or witness such event." A reasonable person conducting an event should, by the nature of the event, be able to decide if the event will attract witnesses, or the more common parlance - spectators.

In *Hill v. Colorado*, 530 U.S. 703, 732 (2000), the Supreme Court discussed the elements of a vagueness challenge:

> A statute can be impermissibly vague for either of two independent reasons. First, **if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement**. *Chicago v. Morales*, 527 U.S. 41, 56-57, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). [Emphasis added.]

The Court stated:

> Petitioners proffer hypertechnical theories as to what the statute covers, such as whether an outstretched arm constitutes "approaching." **And while "[t]here is little doubt that imagination can conjure up hypothetical cases in which the**

Las Vegas City Attorney
400 E. Stewart Ave., 9th Floor
Las Vegas, Nevada 89101
702-229-6629

> **meaning of these terms will be in nice question,"** American Communications Assn. v. Douds, 339 U.S. 382, 412, 70 S.Ct. 674, 94 L.Ed. 925 (1950), **because we are "[c]ondemned to the use of words, we can never expect mathematical certainty from our language,"** Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). For these reasons, we rejected similar vagueness challenges to the injunctions at issue in Schenck, 519 U.S., at 383, 117 S.Ct. 855, and Madsen, 512 U.S., at 775-776, 114 S.Ct. 2516. **We thus conclude that "it is clear what the ordinance as a whole prohibits."** Grayned, 408 U.S., at 110, 92 S.Ct. 2294. **More importantly, speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid "in the vast majority of its intended applications,"** United States v. Raines, 362 U.S. 17, 23, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

*Id.* at 733 (Emphasis added.)

In this case, the use of the term "witness" is not unduly vague. Many events, by their nature will attract spectators. These events, ranging from a company softball game to a political speech, may have an intended audience the holder of the event may wish to observe the event. Plaintiffs even allege they wish to hold events for an intended audience - i.e., witnesses. A reasonable person should be able to estimate the size of an event and determine if a permit is necessary. The event holder is also free to err on the side of caution and apply for a permit.

While Plaintiffs may speculate about hypothetical counter-demonstrators or other unusual circumstances, the ordinance is plain on its face and is understandable by any reasonable organizer of a group event.

## V.

## THE GROUP USE ORDINANCES DO NOT VIOLATE DUE PROCESS

Plaintiffs argue that the group use ordinance violates due process because they do not have an opportunity to challenge the "count" of the group. Their argument ignores the criminal process following the issuance of a citation in which any defendant has the right to proceed to a trial where the government bears the burden of proving the offense.

Under Nevada law, the "state bears the burden of proving, beyond a reasonable doubt, each element of the crime." *Sessions v. State*, 106 Nev. 186, 190, 789 P.2d 1242, 1244 (1990). In the case of a prosecution for a violation of LVMC 13.36.080, the government would be

Las Vegas City Attorney
400 E. Stewart Ave., 9th Floor
Las Vegas, Nevada 89101
702-229-6629

obligated to prove, beyond a reasonable doubt, that an event with more than 25 people was held without a permit but also that the defendant should have reasonably assumed that the event would have attracted the requisite number of people.

The criminal process, with the attendant burden on the government, satisfies any due process opportunity to challenge the "court."

**VI.**

**THE DESIGNATION OF THE PARKS AS CHILDREN'S PARKS IS A REASONABLE TIME, PLACE AND MANNER**

Plaintiffs apparently concede that the designation of three of the CITY's 68 parks as children's parks is content neutral and leaves sufficient alternative avenues of communications. Instead, they appear to claim that protection of children from crime is not a significant government interest. They also erroneously argue that the ordinance is directed solely at "childless individuals."

The protection of children from criminal activity is clearly a significant governmental interest. In *Olmer v. City of Lincoln*, 23 F.Supp.2d 1091 (D.Neb. 1998), the court considered a constitutional challenge to an ordinance prohibiting anti-abortion protests near churches. The Court stated:

> I find and conclude that the interest sought to be served by the ordinance is protecting very young children from being forced to view extremely graphic and quite disturbing images upon their entrance to, or exit from, church. Such images frighten the very young, and cause their parents to shy away from attending church with their children.

*Id.* at 1099. The court concluded:

> I also find that the city's interest in protecting very young children from frightening images is constitutionally important; that is, the interest is "significant," "compelling," and "legitimate." For example, the United States Supreme Court has recognized "that there is a compelling interest in protecting the physical and psychological well-being of minors." Sable Communications of California, Inc. v. Federal Communications Comm'n, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). In another case, the Court stated: "[W]e have repeatedly recognized the governmental interest in protecting children from harmful materials." Reno v. American Civil Liberties Union, 521 U.S. 844, 117 S.Ct. 2329, 2346, 138 L.Ed.2d 874 (1997).

Las Vegas City Attorney
400 E. Stewart Ave., 9th Floor
Las Vegas, Nevada 89101
702-229-6629

*Id.* at 1100. Similarly, the protection of children from criminal activity in City parks is a significant government interest.

Plaintiffs also argue that ordinance somehow targets "childless-individuals." This argument ignores the express language of LVMC 13.36.070. The ordinance provides:

> [N]o person over the age of twelve years, other than a parent, guardian or other responsible person accompanying a child of the age of twelve years or younger, shall visit, frequent, be present in or loiter around any park which is designated [a children's park].

On its face, the ordinance limits the use of these three parks to children under twelve. The only exception is an older parent, guardian or responsible person accompanying the young child.

The ordinance does not target "childless individuals." An adult parent may not frequent the park unless accompanied by his or her child. A childless babysitter or guardian may accompany a young child to a children's park.

The ordinance does not make any classification that parents or non-parents are more likely to commit crimes in parks. The City Council can, however, make the reasonable assumption that young children are less likely to commit crimes than adults or teenagers.

The designation of three parks as children's parks is a valid time, place and manner restriction.

## VII.

## THE CITY TRESPASS POLICY IS CONSTITUTIONALLY VALID

Under Nevada law, an individual may trespass on public property. NRS 207.200. Under policies of the City's Department of Detention and Enforcement, City Marshals may issue trespass warnings to individuals who commit crimes on CITY property.

In *Virginia v. Hicks*, 539 U.S. 113, 123 (2003), the Supreme Court reviewed a trespass regulation at a low income housing project and stated:

> As for the written provision authorizing the police to arrest those who return to Whitcomb Court after receiving a barment notice: That certainly does not violate the First Amendment as applied to persons whose postnotice entry is not for the purpose of engaging

> in constitutionally protected speech. And Hicks has not even established that it would violate the First Amendment as applied to persons whose postnotice *is* for that purpose. **Even assuming the streets of Whitcomb Court are a public forum, the notice-barment rule subjects to arrest those who reenter after trespassing and after being warned not to return-*regardless* of whether, upon their return, they seek to engage in speech. Neither the basis for the barment sanction (the prior trespass) nor its purpose (preventing future trespasses) has anything to do with the First Amendment. Punishing its violation by a person who wishes to engage in free speech no more implicates the First Amendment than would the punishment of a person who has (pursuant to lawful regulation) been banned from a public park after vandalizing it, and who ignores the ban in order to take part in a political demonstration**. Here, as there, it is Hicks' nonexpressive *conduct*-his entry in violation of the notice-barment rule-not his speech, for which he is punished as a trespasser. (Emphasis added.)

Under *Hicks*, City Marshals may constitutionally issue trespass warnings to individuals who commit crimes on CITY property.

Plaintiffs also argue that according to trespass logs maintained by the Marshals, individuals have been issued warnings for non-criminal offenses. *See* First Motion for Summary Judgment by Plaintiffs, Exhibit 10. Specifically, Plaintiffs point to entries noting warnings given for trespass, sleeping and misuse.

Each of these notations identify criminal offenses. Entering property after receipt of a trespass warning is a violation of NRS 207.200. Although Plaintiffs claim that each trespass warning was given in a CITY park, a simple perusal of Exhibit 10 shows that **every notation concerning a warning for sleeping or misuse occurred at the Downtown Transportation Center**. The CITY has adopted specific ordinances regulating conduct at the Transportation Center. Sleeping at the Transportation Center is prohibited under LVMC 10.84.030. Misuse of the Transportation Center, using the facility for non-transportation uses, is prohibited by LVMC 10.84.060. Neither of these ordinances are applicable in CITY parks, nor are they at issue in this case.

The CITY may issue trespass warnings to individuals who commit crimes in CITY parks. Its trespass policy is constitutionally valid.

. . . .

Las Vegas City Attorney
400 E. Stewart Ave., 9th Floor
Las Vegas, Nevada 89101
702-229-6629

VIII.

CONCLUSION

The CITY's group use ordinances, the designation of children's parks and the trespass policy are constitutionally valid. The Court should enter summary judgment in favor of the CITY on these claims.

DATED: June 1, 2007

BRADFORD R. JERBIC
City Attorney

By:

PHILIP R. BYRNES
Deputy City Attorney
Nevada Bar No. 166
400 Stewart Avenue, Ninth Floor
Las Vegas, NV 89101
Attorneys for CITY OF LAS VEGAS

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2007, I served a true and correct copy of the foregoing DEFENDANT CITY OF LAS VEGAS' REPLY TO OPPOSITION TO COUNTER-MOTION FOR SUMMARY JUDGMENT through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by United States Mail at Las Vegas, Nevada, postage fully prepaid) upon the following:

Allen Lichtenstein, Esq.
ACLU OF NEVADA
3315 Russell Road, #222
Las Vegas, NV 89120
Attorneys for Plaintiffs

Lee Rowland
Staff Attorney, ACLU of Nevada
732 S. Sixth Street, Suite 200A
Las Vegas, NV 89101
Attorneys for Plaintiffs

Robert E. Murdock, Esq.
MURDOCK & ASSOCIATES, CHTD.
520 South Fourth Street
Las Vegas, NV 89101
Attorneys for Amici Curiae

AN EMPLOYEE OF THE CITY OF LAS VEGAS