Allen Lichtenstein
General Counsel, ACLU of Nevada
NV Bar No. 3992
3315 Russell Road, No. 222
Las Vegas, Nevada 89120
702-433-2666 - phone
702-433-9591 - fax
alichtensteinlaw@aol.com

Lee Rowland
Staff Attorney, ACLU of Nevada
NV Bar No. 10209
732 South Sixth Street, Suite 200A
Las Vegas, NV 89101
702-366-1902 - phone
702-366-1331 - fax
rowland@aclunv.org
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

GAIL SACCO, LYLA BARTHOLOMAE, JOE SACCO, JOHN BROWN, CODY HUFF, PATRICK BAND, ROBERT EDMONDS, INDIVIDUALS; SOUTHERN NEVADA ADVOCATES FOR HOMELESS PEOPLE, LAS VEGAS FOOD NOT BOMBS; LAS VEGAS CATHOLIC WORKER, AMERICAN CIVIL LIBERTIES UNION OF NEVADA; GARY PECK;

Plaintiffs

v.

CITY OF LAS VEGAS, NEVADA; LOIS TARKANIAN, STEVEN WOLFSON, GARY REESE, STEVEN ROSS, LAWRENCE WEEKLY, LARRY BROWN, CITY COUNCIL MEMBERS; OSCAR GOODMAN, MAYOR; DOUGLAS SELBY CITY MANAGER; LAS VEGAS DEPARTMENT OF LEISURE SERVICES; LAS VEGAS METROPOLITAN POLICE DEPARTMENT, LAS VEGAS DEPUTY CITY MARSHALS,

Defendants.

06-CV-714-RCJ-LRL
06-CV-941-RCJ-LRL

**REPLY TO DEFENDANTS' OPPOSITION TO SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Come now the Plaintiffs and file this Reply to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment and Opposition to Defendants' Counter-Motion for Summary Judgment. This motion is made based on all pleadings and papers on file in this case, oral arguments during the hearing for a Preliminary Injunction against LVMC 13.36.055, the Memorandum of Points and Authorities attached hereto and any further argument and evidence

1 | as may be presented at hearing.

2 |     Dated this 25th day of May 2007:

3 |     Respectfully submitted by:

5 | _____/s/_____      _____/s/_____

7 | Allen Lichtenstein      Lee Rowland
General Counsel,      Staff Attorney, ACLU of Nevada
ACLU of Nevada NV      NV Bar No. 10209
Bar No. 3992      732 South Sixth Street, Suite 200A
3315 Russell Road, No. 222      Las Vegas, NV 89101
Las Vegas, Nevada 89120      702-366-1902 -phone
702-433-2666 - phone      702-366-1331-fax
702-433-9591 - fax      rowland@aclunv.org
alichtensteinlaw@aol.com

Attorneys for Plaintiffs

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Defendants have filed a Counter-Motion for Summary Judgment, but have failed to present a record to defend any of the ordinances at issue in this case. This Court, in its Order granting a Preliminary Injunction against LVMC 13.36.055(A)(6), was clear that even under rational basis review, the government bears the burden of producing some legislative record to defend ordinances that radically reduce the availability of public space. This court noted in its order that an "ordinance regulating group use of city parks, including group feedings, would be constitutional so long as the minimum size of the regulated group and the requirements for obtaining a license are supported by clear legislative history." Order for Preliminary Injunction, January 26, 2007, at 22.

Plaintiffs' Motion for Summary Judgment now includes the City's existing permitting ordinance, which suffers from the very flaws highlighted by this Court in its Order. The permit ordinances allow for group use of over 25 persons only in 15 of the City's 67 parks. Although this Court specifically noted that "the City also needs to tie the number regulated with the size of the park," the Defendants have offered no justification for why over 50 public parks are wholly incompatible with any group use at all. Nor has the City offered any legislative history or record for the selection of the number 25 in the few parks where group use is permitted. Plaintiffs believe that summary judgment in favor of Defendants would be completely inappropriate in the absence of any supporting record, as required by this Court.

Similarly, Plaintiffs also challenge the designation of "Children's-Only Parks," in justification of which the City noted that it criminalized the presence of all childless adults "in response to crime and inappropriate conduct in the parks." Defendants' Motion for Summary Judgment at 13. This Court, in striking down the "no feeding the indigent" law, noted that "there must be a rational relation for the regulation connecting what is outlawed to the corresponding

1  imposition on the City." Order at 22. Again, the City has failed to offer any causal connection
2  between crime statistics and childless adult individuals. Rather than enforce existing criminal
3  laws, they have summarily denied access to a group of persons on an irrational basis. This law
4  should be struck down as an irrational government classification, like LVMC 13.36.055(A)(6).

5  Finally, Plaintiffs challenge the process of Trespassing, or "86"ing, individuals from
6  public property with no due process whatsoever. Defendants have failed to present any argument
7  that the process is in line with the Due Process clauses of the 5th and 14th Amendments. Instead,
8  Defendants have cited one case that did not even discuss the issue of due process, and involved
9  private property. Similarly, the City has offered no further legal or factual justification for
10 LVMC 13.36.055(A)(6), and Plaintiffs request that the preliminary injunction in this case be
11 made permanent, as the City has not added to the arguments presented at the preliminary
12 injunction stage. As such, Summary Judgment in favor of Plaintiffs is appropriate.

13 Plaintiffs maintain that strict scrutiny is appropriate for every ordinance at issue in this
14 case, because each deals with a significant restriction on activities in public parks, which directly
15 impinges on expressive activity. Furthermore, the inclusion of witnesses to a permitted event is
16 directed at expression per se, and the Trespass policy involves the fundamental right of free
17 movement. However, even under rational basis scrutiny, Defendants have failed to present
18 adequate legislative history to support any of the ordinances in this case.

## II. The Park Permitting Ordinances are Facially Invalid

21 Defendants base their argument that the Las Vegas Permit code is constitutional entirely
22 on the facts in *Thomas v. Chicago Park District*, 534 U.S. 316 (2002). However, *Thomas* simply
23 holds that park permit schemes are not *per se* a censorship system which requires the heightened
24 level of procedural requirements of *Freedman v. Maryland*, 380 U.S. 51, 85 (1965), but instead
25 would be analyzed as a content-neutral, time, place and manner restriction. Plaintiffs maintain
26 that the specific park rules in this case are not valid time, place, and manner restrictions, and are

4

...

different than those examined in the *Thomas* case. The *Thomas* Court noted that the Chicago ordinance was saved by the fact that it did not afford the government the discretion to discriminate among speakers or content and was narrowly tailored to not restrict the amount of speech allowed in the parks. 380 U.S. at 323.

    The permit ordinances in this case do not meet the requirement of narrow tailoring, and as evidenced by the citations given to Plaintiffs, afford too much discretion to law enforcement. While the permit details in *Thomas* were purely ministerial, the two large issues that separate the Las Vegas permit code are the unavailability of permits in most parks and the inclusion of witnesses in "counts" of group size. Neither aspect of the Las Vegas code could be fairly termed purely "ministerial," and both cast a far wider net over protected activity than did the regulations in *Thomas.*

**A. The Criminalization of All Group Use in Over 50 Parks is Not Narrowly Tailored**

    First and foremost, the fact that the vast majority of Las Vegas parks, including Huntridge Park, are *totally* off-limits to all group activity is an issue not examined in the *Thomas* case. Plaintiffs Gail Sacco and Lyla Bartholomae were given tickets for failing to obtain a permit in a park *where no permits are ever available under any circumstances.* This fact clearly makes the tailoring analysis vastly different from that in *Thomas*, where the permit regulation applied to all parks. The government bears the burden of showing that its permit scheme is narrowly tailored to serve a significant interest. *S.O.C.,* 152 F.3d at 1147. *See also* Order of Preliminary Injunction, January 26, 2007, at 22 ("City also needs to tie the number regulated with the size of the park" and must be "supported by clear legislative history.").

    Notably, in their Counter-Motion for Summary Judgment, Defendants have not offered any significant governmental interest in disallowing almost all park use by groups of 25 or more. Defendants note only that "in general, group and special events permits are allowed in larger parks," and that the 15 of 68 public parks were selected for group use based on their amenities. Defendants' Motion for Summary Judgment at 4. This summary conclusion that only a handful

5

of public parks are compatible with *any* group use cannot meet the government's burden of proving that its permit scheme is narrowly tailored to avoid infringing on more speech than is necessary.

This Court should consider the chilling effect of the permit ordinances on third parties. When first amendment rights are implicated in a public forum, the Ninth Circuit has held that a facial challenge on behalf of all potential speakers is appropriate. *See, i.e. LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000); *Forsyth County v. The Nationalist Movement*, 505 U.S. 123, 129 (1992):

> "It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable. See, e.g., City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 798-799, and n. 15, 104 S.Ct. 2118, 2125, and n. 15, 80 L.Ed.2d 772 (1984); Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc., 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987). This exception from general standing rules is based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court."

The fact that the majority of public parks are off-limits to all group use clearly presents a large burden on the exercise of free speech rights in the quintessential public forum. In the Ninth Circuit, the speaker's intended audience is given great weight, even down to the specific park. *See Gerritsen v. City of Los Angeles*, 994 F.2d 570, 573 (9th Cir.1993); Plaintiffs' Memorandum in Support of Summary Judgment at 12. The lack of permittable park space virtually assures that many speakers will be unable to reach intended audiences. This is precisely the situation in Huntridge Park, which was a gathering spot for homeless individuals to whom Plaintiffs Sacco, Sacco, Bartholomae, and Food Not Bombs came to speak, minister, share food, and offer assistance. The unavailability of most parks, as well as the resulting likelihood that many intended audiences are off-limits, shows the lack of narrow tailoring in the permit ordinance.

Narrow tailoring also requires that the government leave open ample alternative channels of communication. Defendants argue that 15 permittable parks are, per se, ample. Defendants' Counter-Motion for Summary Judgment at 9. However, this number represents less than a

quarter of all Las Vegas parks, and severely limits the ability of Plaintiffs to reach their intended audience. *See, i.e., U.S. v. Grace*, 461 U.S. 171, 176 (1983). It is axiomatic that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *U.S. v. Schneider*, 308 U.S. 147, 163 (1939). Exclusion from a quintessential public forum necessarily limits individuals' and groups' venues for free speech, particularly in certain neighborhoods where the nearest public park may be miles away.

Importantly, the burden is on the government to explain why speech and group use is limited at each park where permits are unavailable. The City has flipped this burden, and simply alleged that 15 parks is per se "ample," without justifying the removal of over 50 parks from all group use. This cannot meet the high burden the government has when First Amendment rights are at stake. *See, i.e., S.O.C. v. County of Clark,* 152 F.3d 1136, 1147 (9th Cir. 1998). The *S.O.C.* Court found a lack of narrow tailoring, because the government had not given rationales for restricting handbilling in **each** geographic location where it was banned. Indded, such a summary conclusion also fails the rational basis test as set out in this Court's Order. *See* Order at 22.

**B. The Inclusion of Witnesses Impermissibly Operates Against Expressive Events**

This analysis of narrow tailoring in this case would be incomplete without considering Las Vegas' application of the permit ordinance to any activity that includes all witnesses to an event. The combination of the near blackout of permittable space with the inclusion of witnesses to an event means that residents run the risk of arrest in over 50 parks for any activity that happens to draw a crowd, even if they tried to obtain a permit. Facial challenges to permitting ordinances in a public forum have received strict scrutiny from the federal courts. *See Galvin v. Hay*, 374 F.3d 739, 746 (9th Cir. 2004); *Mardi Gras*, 189 F.Supp.2d at 1027; *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1145 (9th Cir.1998).

This should be particularly true here, where the inclusion of witnesses is far more likely to be enforced against controversial gatherings and gatherings likely to attract passers-by, rather

than against a family picnic. In short, the enforcement of the permit code including witnesses operates directly against gatherings that are expressive in nature. This is precisely the type of government action struck down facially by the Supreme Court in *Forsyth*, where the Court examined the effect of a permit fee that was dependent on the potential controversy of a speaker. Not only did the Court find that such a regulation was ripe for a facial challenge (*Forsyth,* 505 U.S. at 129-30), it held that government action dependent on audience reaction is inherently content-based. *Id.* at 130.

Under the Las Vegas code, individuals are not on notice when their organized actions may become criminal, especially when the criminality of their actions may rely entirely on the actions of third parties - the witnesses. The fact that criminal sanction cannot be avoided in over 50 parks, regardless of the organizer's intent, clearly burdens far more speech than necessary to achieve reasonable park use regulation. The Supreme Court has made it clear that conditioning government action on the public reaction to a speaker is plainly unconstitutional. *See Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 135 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation."); *Boos v. Barry*, 485 U.S. 312, 320-21 (1988) (opinion of O'CONNOR, J.); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55-56 (1988).

The permit code's application to spontaneous witnesses, rather than purely organized activity, also belies the permit scheme's purported government interest in simply "avoiding conflicts," since such spontaneous gatherings cannot be planned or avoided. It also fails to present individuals with any notice of when their actions may become criminal, raising issues of vagueness. *See* Plaintiffs' Memorandum in Support of Summary Judgment at 25. This permit scheme clearly presents a real threat to the exercise of First Amendment freedoms, and both the non-availability of most parks and the use of witnesses for the "count" of participants counsel against a finding of narrow tailoring. This application of the ordinance is precisely the type of overbroad ordinance that directly chills constitutional rights in every application, and should be found facially invalid. *See Forsyth,* 505 U.S. at 129.

### C. The Language of Permit Denial Differs from that Approved in *Thomas*

Finally, Defendants argue that the specific language of reasons for permit denial are identical to the ministerial language found in *Thomas*. This is not the case. While the language in *Thomas* was directly tied to "unreasonable dangers" to park space, 534 U.S. at 320 n.1, the Las Vegas code allows denials for uses that "annoy" or "disturb" others. *See* Plaintiffs' Memorandum in Support of Summary Judgment at 14-15. This distinction is particularly meaningful where the City has openly admitted its distaste for Plaintiffs' charitable activities, and has passed ordinances in response to neighbors' complaints about Plaintiffs. Coupled with the City Attorney's in-court admission that activities by Plaintiffs would "never" merit a permit, the subjective language of annoyance grants far too much discretion to City officials to deny permits for uses with which they disagree, but which present no concrete danger to parks.

The Court in *Forsyth* explicitly held that a permitting scheme that allows for discretion based on reaction to the speech is unconstitutional. "A government regulation that allows arbitrary application is "inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." 505 U.S. at 130, citing *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981). Here, the language of "annoyance" grants City officials to determine permit applications based on the speakers' annoying or disturbing effect on others. This is the exact type of discretion not present in the *Thomas* case, and thus Defendants' reliance on *Thomas* to defend the specifics of their permit denial is inapposite.

### D. The Permit Scheme is Impermissibly Vague

Vagueness may invalidate a criminal law for either failing provide notice to enable "ordinary people [to] understand what conduct is prohibited;" or for authorizing or encouraging arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). As Plaintiffs have briefed on pages 12ff of their Memorandum in Support of Summary Judgment, the Permit scheme fails both tests. Defendants have not yet responded to this argument.

9

**E. The Inclusion of Witnesses Violates Due Process**

The test for due process is determined by balancing: (1) the private interest that will be affected by the state action; (2) the risk of erroneous deprivation through the procedures used; and (3) the governmental interest, including additional cost and administrative burdens that additional procedures would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "Due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." *Roley v. Pierce Co. Fire Prot. Dist. No. 4*, 869 F.2d 491, 494 (9th Cir. 1989) (citation omitted).

There is little question that criminal penalties for a count of group use of a park - particularly when such count includes third party witnesses - implicates fundamental First Amendment rights. Thus, the private interest at issue in this case is no less than an individual's right to protest, organize, and freely associate in a public forum without risk of criminal sanction. *See Chicago v. Morales*, 527 U.S. 41, 52 (1999) ("Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is "a part of our heritage'," citing *Kent v. Dulles*, 357 U.S. 116, 126 (1958)). This is not simply a private interest, but also a fundamental Constitutional right. As such, the court should carefully examine the availability of full due process.

The inclusion of witnesses to an event leads to high risk of erroneous deprivation, where "counts" for the purposes of giving a criminal citation to unpermitted events cannot meaningfully be challenged in court. While a state criminal proceeding on any misdemeanor citation offers procedural due process to the defendant, in this instance, the defendant will be at an absolute loss to challenge the basis for the issuance of a citation. By including all witnesses to an event, including strangers or even protestors, the City denies the defendant a meaningful opportunity to challenge the "count" underlying the accused-of criminal action. Defendants will have no way of knowing who was included in the "count," nor any way of contacting them to prove that their inclusion in a "count" with criminal penalties was inappropriate. As such, once the criminal citation is issued that depends on the simple presence of third parties, defendants will have no

Case 2:06-cv-07004-RGK-LRL Document 59 Filed 05/25/2007 Page 10 of 18

"meaningful manner" of challenging the City's determination of group use.

Finally, the additional cost to government of simply not including witnesses in any relevant "count" of group use is nonexistent. In fact, it is clear in this case that law enforcement officials spent hours lying in wait for group use, as they interpreted it, to exceed 25 people. Thus, the cost and administrative burden would actually seem to be lessened if this Court finds inclusion of witnesses to be unconstitutional.

### III. Plaintiffs Have Standing to Challenge the Permit Ordinances As Applied

Defendants argue that Plaintiffs lack standing to challenge the permit ordinances as applied because they cannot prove a selective enforcement claim. This argument misconstrues the nature of an as-applied claim. All that is required for standing to challenge a law as applied to Plaintiffs is an injury in fact, "that is both 'concrete and particularized' and 'actual and imminent.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1153 (9th Cir. 2000). *See also Friends of Earth v. Laidlaw Environmental Services,* 528 U.S. 167, 183 (2000). There is no question that receipt of criminal sanction provides a concrete and actual injury to Plaintiffs. Indeed, even the threat of criminal citation is adequate for a finding of standing. *See, i.e. Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979).

Plaintiffs Gail Sacco, Lyla Bartholomae and John Brown have direct standing to challenge the park reservation system because they have been arrested and charged for violating Las Vegas City Code 13.36.080. While park cases that involve fundamental rights often lead to facial challenges as well, the right to challenge a law as applied to Plaintiffs who have been criminally cited for violation of that law is a given.

### IV. The Park Permitting Ordinances are Unconstitutional as Applied to Defendants

Furthermore, the misdemeanor citations given to Plaintiffs note that they were found in violation for having 25 or more people "participate in or witness" their events. This particular

11

application of the permit code is a part of Plaintiffs' direct First Amendment challenge, not a separate "selective enforcement" claim. As set out above, inclusion of witnesses to an event clearly affects expressive and controversial events far more than non-expressive events such as picnics. The Supreme Court has made it clear that conditioning government action on the public reaction to a speaker is plainly unconstitutional. *See Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 135 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation."); *Boos v. Barry*, 485 U.S. 312, 320-21 (1988) (opinion of O'CONNOR, J.); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55-56 (1988).

## V. Plaintiffs Have Standing to Challenge the Special Events Ordinances

Defendants argue that Plaintiffs lack standing to challenge any of the Special Events ordinances, because the administrative interpretation of the Special Events ordinance applies only to groups of 400 or more. Defendants Motion for Summary Judgment at 10. Plaintiffs do not claim to have held any event where 400 people might reasonably show up, and do not contest, nor have standing to contest, the application of the Special Events Ordinances as applied to groups of 400 or more people.

However, the administrative definition of "400 or more" as a Special Event cannot fairly be termed a "limiting construction." It is a complete re-definition of the existing plain language of the ordinance, *the entire point of which is assessing special charges and procedures based on a number of people - 25*. The fact that the parks department has decided to apply this ordinance to a radically different number - 400 - is not a "construction" of the 25 or more ordinance, it is a completely different policy.

Plaintiffs, who looked into park statutes as the controversy surrounding their activities began, had no reason to believe that the Special Events ordinances meant anything other than what they say - that they apply to 25 people or more. This is not an ambiguous statute whose purpose may be subject to interpretation, and thus administratively limited in a manner that does

12

away with constitutional implications, as it was in *Santa Monica Food Not Bombs,* 450 F.3d 1022, 1027 (9th Cir. 2006)*,* the case Defendants cite. The limiting construction in that case did not change the plain language of the statute, but rather limited its application by providing a 'safe harbor' where permits were not required for very specific types of marches. *Id.* Here, by contrast, Plaintiffs believed in good faith that they were subject to the plain language of this statute, and their activities were chilled based on that plain language.

Indeed, if the ordinance itself simply limited events to those with 400 people or more, Plaintiffs would not have included it in their complaint. Plaintiffs, like other third parties who would reasonably look to City code for governing ordinances, would have no idea from the plain language of the statute that they would be magically exempt up to 399 people. Thus, the relevant constitutional issue, that of a chill on First Amendment rights, is clearly present in the plain language of the statute, and thus the Court should reject Defendants' argument that Plaintiffs lack standing to challenge these ordinances.

**VI.   The Children's-Only Park Ordinances Are Not a Valid Time, Place, and Manner Restriction**

Defendants acknowledge that the Children's Only Parks ordinances are subject to narrow tailoring as a time, place, and manner restriction that impinges on First Amendment rights. The Defendants state that the ordinances are "narrowly tailored to the protection of children." Narrow tailoring requires a "significant government interest." *See, i.e., A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 792 (9th Cir. 2006). The interest put forward by the City is the "protection of children," yet Defendants also state that it had to enact the Children's-Only Park ordinances "in response to crime and inappropriate conduct in the parks." Defendants' Motion for Summary Judgment at 13.

The City then made the conclusory judgment that childless individuals were responsible, as a class, for the criminal behavior which made parks inappropriate for children. This is

13

precisely the same approach that the City has taken with LVMC 13.36.055(6), forbidding the sharing of food with indigent individuals, presuming that criminal activity was linked to homeless persons. The utter lack of fit between the stated goals of the City is clear from its unwillingness to approach criminal activity with enforcement of existing law, and instead to lay all blame for this activity at the feet of a certain class of people - here, childless adults. *See* Order of Preliminary Injunction, January 26, 2007, at 22 ("There must be a rational relation for the regulation connecting what is outlawed to the corresponding imposition on the City.").

Notably, the City has *not* stated that the designated Children's-Only parks were designed for children, nor that children are the primary intended users of the park. Instead, it simply seeks to make a summary judgment about a class of people, and exclude them wholesale from park use, rather than enforce laws which quite clearly meet the City's interest in combatting criminal action in public parks. The Children's-Only Park ordinances should fail the strict scrutiny requirement of narrow tailoring, and indeed should even fail a rational basis review as did LVMC 13.36.055(6) before this Court. *See* Transcript of Oral Argument at 34-35; Plaintiffs' Memorandum in Support of Summary Judgment at 20-21; Order at 22.

**VII.     The Trespass System Violates the Guarantee of Due Process**

Plaintiffs' Counter-Motion for Summary Judgment relies only on one case to defend the practice of Trespassing, or 86ing, individuals based on police officer judgment alone. Defendants cite to *Virginia v. Hicks*, 539 U.S. 113 (2003), a case which deals entirely with First Amendment overbreadth claims by an individual given a notice of Trespass on private property by a housing authority, as applied to a criminal defendant who did not even allege that he was engaged in protected activity and was a defendant in an ongoing criminal case for destruction of property at that location. 539 U.S. at 117. The defendant in *Hicks* had been arrested twice for trespassing on the same private property, and given a full panoply of due process rights twice prior to the Trespass notice at issue in *Hicks*. *Id.* Notably, the words "due process" appear

14

nowhere in this opinion; it is simply not a case that involves a due process analysis.

Nor did the Supreme Court analyze the issue of vagueness in the Trespass policy, and it is worth noting that Hicks' Trespass notice was in writing, and signed by him. *Id.* at 117. Thus, there are few parallels in either the facts or legal analysis between this case and *Hicks*. The closest that the *Hicks* case comes to bear on the facts in this case is an analogy used by the Court to explain why Hicks' Trespass order did not violate the First Amendment: the case "no more implicates the First Amendment than would the punishment of a person who has (pursuant to lawful regulation) been banned from a public park after vandalizing it, and who ignores the ban in order to take part in a political demonstration." *Id.* at 123. Of course, Plaintiffs argument in this case is that the ban here is not pursuant to a lawful regulation.

On remand, the Virginia Supreme Court did deal with issues of vagueness and due process, but the facts sharply distinguish those facts from the ones at issue here, and that case has no controlling authority before this federal Court. On remand, the Virginia Supreme Court held that Hicks could not support a vagueness challenge because his conduct was squarely within the Trespass statute, in part because he had *signed a written acknowledgment* of his inability to return to the housing development, and had been involved in three separate criminal cases for his behavior at the development and offered due process on each. *Com. V. Hicks,* 267 Va. 573, 581; 596 S.E.2d 74, 78 (Va. 2004).

Secondly, the Court held that he could not prove a due process vagueness challenge, because "unlike the ordinance in *Morales* that affected persons on public property, the Housing Authority's trespass policy only applies to persons who commit acts of intentional criminal trespass upon the Housing Authority's *privately-owned real property*" (emphasis added). *Id.* at 267 Va. at 583; 596 S.E.2nd at 79. Thus, the crucial distinction for the Virginia Supreme Court was the fact that Hicks' claims did not involve public property. It is undisputed that the Trespass policy in this case applies solely to public parks.

Plaintiffs reincorporate all arguments that the Trespass policy violates due process and is

impermissibly vague, *see* Plaintiffs' Memorandum in Support of Summary Judgment at pages 22-28. Defendants have thus far cited to no relevant authority in their Counter-Motion for Summary Judgment to defend the Trespass policy on either count.

**VIII. The Preliminary Injunction Against LVMC 13.36.055(A)(6) Should be Made Permanent**

Plaintiffs again reincorporate all arguments made against the constitutionality of LVMC 13.36.055(A)(6). Defendants have presented no further factual or legal justification for this law since the entry of that injunction, and Plaintiffs request that his Court make the Order permanent.

**IX. Conclusion**

Plaintiffs and Defendants agree that this case can be resolved by this Court based on the undisputed facts at issue. However, viewing those facts in a light most favorable to the Plaintiffs, Defendants' motion for Summary Judgment in their favor must be denied. Defendants have offered little to no defense of their Trespass policy. Defendants have offered only summary conclusions to defend the lack of fit between a government interest and the enactment of both the Children's-Only parks and of LVMC 13.36.055(6) (no feeding the indigent). In addition, neither the Permitting ordinances nor the Children's-Only parks ordinances are supported by *any* relevant record, and lack the narrow tailoring required of government actions impinging on speech in a public forum.

In contrast, Plaintiffs have shown that the ordinances and policies in this case operate to substantially restrict access to a quintessential public forum, and are likely to directly chill the expressive activities of Plaintiffs and third parties. The Ninth Circuit has been consistently willing to apply facial challenges to park permitting ordinances, based on the high potential for interference with protected First Amendment rights, and furthermore to extend that challenge to protect the rights of third parties not before the Court. None of the ordinances or policies at issue

in this case meet the strict requirements for government action impinging on fundamental rights.

Finally, even if this Court should find that rational basis scrutiny is appropriate for any of the ordinances or policies, Defendants have not met even the minimal burden as set out by this Court in its Order for Preliminary Injunction. Plaintiffs believe they are entitled to Summary Judgment, and injunctions prohibiting the enforcement of all ordinances and policies listed in the Amended Complaint.

DATED: May 25, 2007

_____/s/_____

Lee Rowland
Staff Attorney, ACLU of Nevada
NV Bar No. 10209
732 South Sixth Street, Suite 200A
Las Vegas, NV 89101
702-366-1902 - phone
702-366-1331 - fax
rowland@aclunv.org

Allen Lichtenstein
General Counsel, ACLU of Nevada
NV Bar No. 3992
3315 Russell Road, No. 222
Las Vegas, Nevada 89120
702-433-2666 - phone
702-433-9591 - fax
alichtensteinlaw@aol.com

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document by fax and by placing it in the United States Mail, postage prepaid, at Las Vegas, Nevada, addressed to:

Philip Byrnes
Deputy City Attorney
City of Las Vegas
400 Stewart Ave., 9th floor
Las Vegas, NV 89101
702-386-1749 fax

    /s/
_____ Lee Rowland